UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TOMMY E. REED,                          )
                                        )
            Plaintiff(s),               )
                                        )
    vs.                                 )        Case No. 4:04CV00745-ERW
                                        )
CITY OF ST. CHARLES, MISSOURI, et al.,  )
                                        )
            Defendant(s).               )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants City of St. Charles Missouri, City of St. Charles, Missouri Police Department, St. Charles Mayor Patricia York, St. Charles Police Chief Timothy Swope, St. Charles Police Captain Patrick McCarrick, St. Charles Police Officer Richard Fischer, St. Charles Police Officer Debra Hymes, St. Charles Police Officer James Schweppe and St. Charles Police Officer William Witterholt's ("Defendants") Motion for Summary Judgment [doc. #89].

## I. PROCEDURAL BACKGROUND

Plaintiff Timothy Reed ("Plaintiff") filed suit against Defendants under 42 U.S.C. § 1983, alleging that Officers Richard Fischer, Debra Hymes, James Schweppe and William Witterholt (collectively "Officer Defendants") used excessive force in effectuating the arrest of Plaintiff, in violation of the Fourth and Fourteenth Amendments of the Constitution. This Court granted Plaintiff's Motion to Appoint Counsel [doc. #30] on April 6, 2005, and allowed an Amended Complaint to be filed on September 29, 2005. Following discovery in this matter, Defendants

1

then filed the pending motion for Summary Judgment [doc. #89] on November 31, 2006; the motion is fully brief and currently before this Court.

## II. BACKGROUND FACTS[1]

The claims alleged by Plaintiff arise from an incident that took place on May 9, 2003. The City of St. Charles Police Department received a 911 call from Ms. Patricia Singley ("Ms. Singley"), reporting a violent assault in progress at her neighbor's house. The neighbor was later identified as Ms. Patricia Edgar ("Ms. Edgar"), and the attacker was identified as Mr. Timothy Reed. A transcript of the 911 call shows that Ms. Singley observed Plaintiff beating Ms. Edgar, yelling at her, and attempting to drag her into the house. Ms. Singley stayed on the phone with the 911 operator until police arrived. Officers Fischer and Witterholt were dispatched to the scene and arrived within minutes of the 911 call. Officer James Schweppe also responded to provide backup for Officers Fischer and Witterholt. Officer Schweppe met up with Officers Fischer and Witterholt, and it was decided that he would drive around to the front of Ms. Edgar's residence, while Officers Fischer and Witterholt approached from the back, over the fence which separated Ms. Singley's yard from Ms. Edgar's yard.

Officer Fischer observed Plaintiff shove Ms. Edgar, block her path, and then throw her to the concrete patio. Officer Fischer further observed Plaintiff slam Ms. Edgar's head into the concrete and straddle her. It was at this point that Officer Fischer was joined by Officer Witterholt, who observed Plaintiff sitting on top of Ms. Edgar. Both officers then jumped the fence and approached. Officer Fischer arrived first, and announced and identified himself as a police officer. Officer Fischer then ordered Plaintiff to get off Ms. Edgar. Plaintiff stood up,

---

[1]The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts, Plaintiffs' Statement of Controverted Material Facts, and Defendants' Opposition to Plaintiffs' Statement of Controverted Material Facts.

yelled something, and than immediately ran away from the officers. Officer Fischer testified at his deposition that he heard something that sounded like a clicking sound, and that when he shined his flashlight at Plaintiff he observed a silver object in Plaintiff's hands. Plaintiff denies that he had anything in his hands.

Plaintiff ran towards the front of Ms. Edgar's house, and did not respond to Officer Fischer's commands for him to stop. In an attempt to cut off Plaintiff's path, Officers Fischer and Witterholt ran around the house in the opposite direction, at which time they lost sight of Plaintiff. Officers Fischer, Witterholt, and Schweppe then began searching for Plaintiff, and within a couple of minutes they located Plaintiff. Plaintiff testified in his deposition that he was sitting, waiting for the Officers to locate him, at which time, he lay face down, with his hands behind his back. The Defendants dispute this statement, and point to Officers Witterholt, Fischer, and Schweppe's testimony as evidence that Plaintiff was hiding under a bush when Officer Fischer located him.

At this time the accounts by Plaintiff and by Defendants diverge further. Plaintiff testified that when he was located he was handcuffed, and after he was handcuffed, Defendant Officers proceeded to kick and beat him. Specifically, Plaintiff testified that he was hit with something metal across the head which caused him to momentarily pass out. This is in contrast to the Defendants testimony; the Defendant Officers testified that when they located Plaintiff he was curled up, with his hands underneath him, and his head tucked in, almost completely hidden from view by the bush. They dragged him from underneath the bush, but were still unable to reach Plaintiff's hands. Officer Fischer testified that he was concerned that Plaintiff might be concealing a weapon, and continued to command Plaintiff to show his hands. Due to Plaintiff's alleged failure to cooperate Officer Fischer testified that he administered a number of strikes to Plaintiff's

left peroneal,[2] both with an ASB, or baton, and with his knee. Officer Fischer further testified that Plaintiff failed to respond, at which point Officer Schweppe was able to lift Plaintiff's head and spray mace in his eyes, nose and mouth, which resulted in Plaintiff releasing his hands, allowing Officer Witterholt to handcuff him. Officer Schweppe testified that Officer Fischer may have administered knee strikes after the mace, the time frame of each of the actions being not entirely clear. The entire incident lasted about thirty seconds to one minute, according to the Officer Defendants.

After Plaintiff had been handcuffed he was carried to the transport vehicle, with his feet dragging, and was taken to the police station. The Officer Defendants testified that he refused to cooperate. Conversely, Plaintiff testified that he was disoriented due to the beating and was unable to cooperate. At the police station, Plaintiff requested medical attention due to pain in his head, and chest. He was taken to the hospital, where Dr. Donald Phillips examined him and released him as fit for confinement. *Defs. Memo. in Supp. of Defs. Mot. for Summ. Judg.*, Ex. 25.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of

---

[2]The upper thigh between the hip and the knee.

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party

fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

Plaintiff alleges that he is entitled to relief under 42 U.S.C. § 1983.[3] Section 1983 is "merely a vehicle for seeking a federal remedy for violations of federally protected rights. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). To determine whether a violation occurred, two essential elements must be present: 1) the conduct complained of was committed by a person acting under color of state law; and 2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Plaintiff has clearly alleged a violation under § 1983, as he brought suit against persons acting under color of state law, alleging a violation of the Fourth Amendment of the Constitution of the United States.

Defendants base their motion for summary judgment on the Officer Defendants' entitlement to qualified immunity. Defendants' further argue that this would resolves all Counts against the Defendants, as there can be no policy or custom of using excessive force, as alleged under Count II, if the Officer Defendants[4] themselves did not use excessive force. The Court will

---

[3] 42 U.S.C. § 1983 states:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ..

[4] Plaintiff asserts Count I against all Officer Defendants, including Officer Hymes. All of the testimony, including Officer Hymes' Affidavit, supports the conclusion that Officer Hymes was not present at the scene of the arrest. Her only role in the incident was taking photographs of the scene and of the victim the following morning. *Defs. Memo. in Sup. of Defs. Mot. for Summ. Judg.*, Ex. 26. Therefore, Officer Hymes is entitled to Summary Judgment on Plaintiff's claim of

first address whether the Officer Defendants are entitled to qualified immunity, and will then address the claims against the remaining Defendants.

## A. QUALIFIED IMMUNITY

"Government officials performing discretionary functions are shielded from liability for civil damages in § 1983 actions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Foulks v. Cole County, Missouri*, 991 F.2d 454, 456 (8th Cir. 1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has described qualified immunity as composed of both a subjective and objective element. *Harlow*, 457 U.S. at 815. Stating these requirements in the negative, the Supreme Court has held that "qualified immunity would be defeated if an official *knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff, *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Id.* (emphasis in original) (internal quotation omitted). The Eighth Circuit has articulated a two part inquiry in determining whether a defendant's actions, taken within the sphere of official responsibility, are protected by qualified immunity. *Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002). "First we must inquire whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant officials violated a constitutional right. If we determine that the plaintiff has shown a violation of a constitutional right, we then must inquire whether the constitutional right was clearly established." *Id.*

---

excessive force. The remaining discussion will focus on the Officer Defendants Fischer, Witterholt, and Schweppe.

The first requirement is that the Plaintiff assert the violation of a constitutionally protected right. *Id*. *See also Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007) ("In resolving questions of qualified immunity, courts are required to resolve a 'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Supreme Court in *Graham v. M.S. Connor*, held that a claim for excessive use of force arises under either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishment. 490 U.S. 386, 394 (1989). "Where. . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons. . . against unreasonable . . . seizures' of the person." *Id.* (quoting U.S. Const. Amend. IV). The Supreme Court reasoned that the Fourth Amendment protects a person against unreasonable seizures, and that the "reasonableness of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Id.* at 395 (emphasis in original) (internal quotation omitted). Plaintiff has asserted that the Officer Defendants kicked him repeatedly, hit him in the head with a flashlight, and sprayed him repeatedly with mace; all of this taking place after he was handcuffed and cooperating. If these allegations are true, then the Officer Defendants would have been unreasonable in carrying out the arrest in violation of the Fourth Amendment.

However, this Court must determine whether the evidence provided by the parties, taken in the light most favorable to the Plaintiff, is sufficient to support Plaintiff's allegations that the Officer Defendants' actions were unreasonable and in violation of the Fourth Amendment. If the Officer Defendants acted reasonably, then there is no constitutional violation. As stated by the

Supreme Court "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal citation omitted). In order to determine the reasonableness of the Officer Defendants' actions, the Court must first determine what those actions were; Plaintiff and Defendants present two very different accounts of the events of May 9, 2003.

All three police officers, Officer Witterholt, Officer Fischer, and Officer Schweppe, testified in their depositions as to the actions which took place on the evening of May 9, 2003. Although there are minor discrepancies in the Officer Defendants' testimony[5] their accounts of the incident are largely identical, and all refute the testimony by the Plaintiff. Furthermore, the Officer Defendants' deposition testimony is consistent with a contemporaneous police report which was completed by Officers Witterholt and Fischer.[6] The overwhelming evidence provides the following course of events. Officer Fischer was dispatched to a domestic violence call. Officers Witterholt and Schweppe were also in the vicinity, and responded to provide back up. Officer Schweppe arrived last, and after conferring with Officers Witterholt and Fischer, he returned to his vehicle and drove around to the front of the house where the altercation was taking place

---

[5]For example, one of the differences is whether all of the knee and baton strikes took place before the use of mace by Officer Schweppe. Officer Schweppe testified that Officer Fischer administered additional strikes after he sprayed Plaintiff with mace, where Officer Fischer testified that all strikes took place before the use of mace. Neither officer disputes that both baton and knee strikes, and mace were used on Plaintiff in order to effectuate his arrest.

[6]Officer Schweppe did not complete a report following the incident. According to the deposition testimony of the Officer Defendants, it is general practice for the primary officer to complete the report, and to request supplemental reports if necessary. In this case, Officer Fischer was the primary officer, and he received a supplemental report from Officer Witterholt.

between Plaintiff and Ms. Edgar.  Officers Witterholt and Fischer approached from the rear, over the fence that separated Ms. Edgar's yard from Ms. Singley's yard.  Before alerting Plaintiff to their presence, both Officers Witterholt and Fischer observed Plaintiff assaulting Ms. Edgar.  Officer Fischer then shined a flashlight on Plaintiff and announced his status as a police officer and ordered Plaintiff to stand up.  It was at this point that Plaintiff ran.

Officer Fischer located Plaintiff a few houses away hiding under a bush, and was shortly joined by Officers Schweppe and Witterholt.  The Officer Defendants were required to use forceful tactics in order to handcuff Plaintiff.  The Officer Defendants testified that when they located Plaintiff, he was almost entirely hidden, and they had to physically drag Plaintiff out from under the bush.  At this time Plaintiff was face down with his hands underneath him.  The Officer Defendants testified that the entire incident, from the time Plaintiff was located and dragged out from under the bush, until the time he was handcuffed took less than a minute.  Officer Fischer testified to administering baton strikes and knee strikes in order to release Plaintiff's hands, and Officer Schweppe testified to spraying Plaintiff's face with mace, in order to release Plaintiff's hands.  At some point during the strikes and mace, Officer Witterholt was able to get one of Plaintiff's hands, handcuff it, and eventually placed the handcuffs on the second hand.  All Officer Defendants testified that at no point did Plaintiff protest, make any exclamations of pain, nor did he attempt to physically attack the Officer Defendants.  Rather they testified, Plaintiff lied face down, and refused to cooperate or respond to the Officer Defendants' commands.  Plaintiff's failure to cooperate continued, as Officer Schweppe and Fischer dragged Plaintiff to the patrol vehicle.[7]

---

[7]In further support of these facts, Defendants submit the guilty plea and trial transcript from the criminal proceedings against Plaintiff resulting from Plaintiff's actions on May 9, 2003, which show that Plaintiff pled guilty to resisting arrest, along with a number of other felonies.

Plaintiff provides a different version of events. However, this Court has reviewed all of the deposition testimony and exhibits that were submitted in support of and in opposition to this motion for summary judgment, and cannot find sufficient evidence to support Plaintiff's position. In order to defeat a motion for summary judgment, Plaintiff must provide sufficient evidence that a jury could find in his favor. *Anderson*, 477 U.S. at 247-248 (A genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party."). Furthermore, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . .." *Id.* (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Specifically, in the Fourth Amendment context, the Eighth Circuit has held that a plaintiff's substantive allegations must be supported by "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal citation omitted). Plaintiff has not met this responsibility. There are inconsistencies within Plaintiff's own deposition testimony[8] as well as evidence contradicting

---

Case law supports that a guilty plea may be used in a subsequent civil action as evidence of the crimes committed. *See e.g. Safeco Ins. Co. of America v. McGrath*, 42 P.2d 657, 660 (Wash.Ct.App. 1985) ("There is little question that pleas of guilty to, and convictions of, felony charges are admissible in a subsequent civil action"); *See also* 29A AM. JUR. 2D *Evidence* § 783 (2007) ("When relevant, the plea of guilty to a charge may be admitted into evidence in a subsequent civil action as an admission of the act charged."). Plaintiff's plea in State Court to the felony charge of resisting arrest supports Defendants' assertions and is inconsistent with the statements made by the Plaintiff in his deposition.

[8]For example, Plaintiff first states that he lay face down when ordered to do so by one of the officers, *Pl. Depo.*, p. 195, but later says that the was laying face down as the officers approached, *Pl. Depo.*, p. 200.

Plaintiff's testimony;[9] Plaintiff has provided no evidence independent from his contradictory testimony, corroborating his version of events. *See e.g. Jeffreys v. The City of New York*, 426 F.3d 549, 554 (2nd Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal citation omitted)).

Plaintiff asserts that this Court is precluded from making credibility determinations. *Pl. Memo. in Opp. to Defs. Mot. for Sum. Judg.*, p. 4. Plaintiff cites to *Adickes v. S.H. Kress & Co.*, in support of this proposition. 398 U.S. 144 (1970). However, this argument is unpersuasive. While it is true that a court is not to make credibility determinations, the Plaintiff's assertions alone are insufficient to present a triable issue of fact. In a recent Supreme Court decision, the Court held: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776. It is clear that Plaintiff's rendition of the events of the evening of May 9, 2003 is not supported by the evidence, and therefore the Officer Defendants' account is accepted as the basis for this motion for summary judgment.

The Court has determined that there are insufficient factual disputes to be decided by a jury, however, it must also determine whether the facts, supported by the evidence, are sufficient to support Plaintiff's claim. Stated differently, were the actions of the Officer Defendants reasonable under the circumstances.

---

[9]For example, Plaintiff testified in his deposition that he received serious injuries to his head and chest, however, he was examined at St. Joseph's hospital, and Dr. Phillips released him as fit for confinement.

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (internal quotation and citations omitted). The Supreme Court specifically emphasized that this determination is to be "judged from the perspective of a reasonable officer on the scene[,]" and not "with the "20/20 vision of hindsight." *Id.* With all that said, the Court notes that this is an objective test, without regard to the individual officers intent or motivation. *Id.* at 297 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

The facts of this case support the reasonableness of the actions taken by the Officer Defendants. Officers Fischer and Witterholt observed the Plaintiff restraining and beating Ms. Edgar, and therefore were reasonable in believing that he was dangerous. Furthermore, he disregarded the commands of Officer Fischer to stop, running from the Officer Defendants as they approached. He also disregarded the Officer Defendants' commands to show his hands. It was therefore reasonable to use force in order to free the Plaintiff's hands and handcuff him. *See e.g. Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) ("When Wertish [plaintiff] finally stopped but failed to comply with orders to get out of his vehicle, it was objectively reasonable for Krueger [police officer] to pull Wertish from the truck and handcuff him."). Additionally, the Officer Defendants testified that they were concerned that the Plaintiff may have been concealing a weapon beneath him, posing a further threat to the Officer Defendants. Officer Fischer testified that he saw something shiny in Plaintiff's hands when he was standing over Ms. Edgar, and that he heard a clicking noise. All of these facts taken together make the actions of the Officer

Defendants reasonable. They administered knee and baton strikes, and sprayed mace, in order to force the Plaintiff to release his hands. Once this necessity had been accomplished, the use of force stopped.

The reasonableness of the Officer Defendants is further supported by reference to the use of force policy in place in the St. Charles Police Department at the time of the incident. *Def. Memo. In Sup. of Defs. Mot. for Summ. Judg.*, Ex. 34; *See also Officer Fischer Depo.*, p. 65. The policy allowed officers to use a certain level of force in response to a certain level of resistance. *Id.* Officer Fischer describes in his deposition the use of force continuum that is contained within the use of force policy adopted by the City of St. Charles Police Department at the time of the incident. The "[f]orce continuum for officers is officer presence, verbal commands, and then you have open hand control, soft open hand control, hard open hand control, intermediate weapon, soft and hard intermediate weapon, and deadly force." *Depo. Officer Fischer*, p. 60, lines 8-12. The Officer Defendants used knee strikes, baton strikes, and mace against Plaintiff, which constitute open hand control (contact without a weapon), hard hand control (peroneal strikes), and intermediate weapon both hard and soft (baton and mace respectively), on the use of force continuum. *Id.* at p. 61, lines 5-25. This use of force continuum is used in conjunction with the resistance continuum. *Id.* at p. 67, line 5-9. The resistance continuum consists of psychological intimidation, passive resistance, defensive resistance, active aggression, and agitated active aggression. *Id.* at p. 66 line 16- p. 67 line 5. Plaintiff's failure to obey verbal commands, and attempts to flea from police, constituted defensive resistance which led to the Officer Defendants use of force. Such defensive resistance, taken in conjunction with the Officer Defendants' reasonable concern that Plaintiff may have been concealing a weapon, justify the amount of force used. The Department's use of force policy, and the actions of the

Officer Defendants in accordance with that policy, supports the Court's conclusion that they acted reasonably in their response to Plaintiff. Plaintiff no doubt suffered some injuries from the use of mace, and several hits from the baton and Officer Fischer's knee, however, this was only after the Plaintiff refused to cooperate with the Officer Defendants. The Court concludes that the Officer Defendants actions were reasonable. It is therefore unnecessary to address the second prong of the qualified immunity analysis, whether the constitutional right was clearly established, as no constitutional violation occurred.

### B. COUNT II

Under Count II of Plaintiff's First Amended Complaint, Plaintiff alleges that the City of St. Charles, Missouri, the City of St. Charles, Missouri Police Department, Mayor York, Chief Swope, and Commander McCarrick, are liable for failure to instruct, supervise, control and discipline the Officer Defendants. Specifically, that there exists "policies or customs, practices and usages that are so pervasive that they constitute the policy of the department, and caused the constitutional deprivations of the Plaintiff. . .." *Pl. First Amend. Compl.*, ¶6. However, these claims also must fail as they are predicated upon the claim against the individual officers. *See Moody*, 23 F.3d at 1412 ("Moody's [plaintiff's] claims against the County and Sheriff Uebinger are predicated on his claim against [officer] Fishman. Since we find that [officer] Fishman is entitled to summary judgment, Moody's [plaintiff's] claims against the County and Sheriff Uebinger must similarly fail."); *see also Abbott v. City of Crocker, Missouri*, 30 F.3d 994, 998 (8th Cir. 1994) ("The City cannot be liable in connection with either the excessive force claim or the invalid arrest claim, whether on a failure to train theory or a municipal custom or policy theory, unless Officer Stone is found liable on the underlying substantive claim."). The City, the

police department, and the respective officials and supervisors cannot be liable for allowing a practice of unconstitutional behavior where the underlying constitutional claim is unsuccessful.

## V.  CONCLUSION

The Court concludes that all Defendants are entitled to Summary Judgment, as the Plaintiff has failed to provide any evidence which creates a material issue of fact.  The Officer Defendants were reasonable in their use of force to effectuate the arrest of Plaintiff and therefore they are protected by qualified immunity.  Furthermore, under Count II, the City of St. Charles and the City of St. Charles Police Department cannot be liable for a pattern or practice of unconstitutional conduct, as no unconstitutional conduct occurred.  All counts against the Defendants are dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #89] is **GRANTED.**

Dated this <u>6th</u> Day of <u>June</u>, 2007.


_E. Richard Webber_
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE